IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

----oo0oo----

| | |
|---|---|
| JACKIE BLACKHAWK, personally and as personal representative of the ESTATE OF FELIPE MAX GALLOWAY, and DOROTHY GALLEGOS, as parent, natural guardian, and next friend of D.G. and A.G., minors,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF CHUBBUCK, RICHARD T. WEBB, CLIFF CUMMINGS, FARLEY MERICA, RANDY SEVERE, and JOHN DOES I through X,<br><br>Defendants. | CASE NO. CV-04-629 E BLW<br><br><u>MEMORANDUM AND ORDER RE: MOTION TO AMEND COMPLAINT, MOTION TO DISMISS, AND MOTION FOR SUMMARY JUDGMENT</u> |

----oo0oo----

This case is before the court on plaintiffs' motion to amend their complaint and further to correct their amended complaint, and defendant Cliff Cummings' motion to dismiss this action as against him for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) or in the alternative for summary judgment pursuant to Federal Rule of Civil Procedure 56.

1

A.   <u>Plaintiffs' Motion to Amend the Complaint</u>

Plaintiffs' motion for leave to file the second amended complaint was filed on September 8, 2005, within the deadline for amendments to the pleadings. The second amended complaint is thus subject to the Rule 15(a) standard for granting leave to amend. Fed. R. Civ. P. 15. However, the self-styled "corrected" amended complaints, filed on September 22nd and October 5th, were filed after the amendment cut off date specified in the Case Management Order and are thus governed by Fed. R. Civ. P. 16.

Federal Rule of Civil Procedure 16 permits a party to amend its complaint after the date specified in the scheduling order only when the movant shows good cause for amendment in addition to satisfying the requirements of Rule 15(a). <u>Johnson v. Mammoth Recreations, Inc.</u>, 975 F.2d 604, 608-09 (9th Cir. 1992). Primarily, Rule 16 requires the party seeking amendment to demonstrate that, despite diligent efforts, the proposed amendments could not have been requested before the amendment deadline. <u>Id.</u> at 609. Lack of prejudice toward the non-moving party, the focus of a Rule 15(a) inquiry, is irrelevant if the moving party was not diligent. <u>Id.</u>

Here, plaintiffs assert that they were unable to ascertain the identities of Officers Frasure, Ellis, and Galloway until after defendants responded to their June 15, 2005 discovery requests on August 18, 2005. (Pls.' Oct. 5, 2005 Amended Mot. to Am. Compl. ¶¶ 1-3.) Culling through these volumes that took defendants nearly two months to compile understandably took plaintiffs' attorney more than three weeks. Consequently, the court finds that plaintiffs' failure to meet the September 8,

2

2005 target date was not the result of indolence, and that plaintiffs have satisfied the good cause requirement of Rule 16.

When litigants seek to add claims or parties presently immune from suit due to the expiration of the statute of limitations, the amending party must also satisfy the Rule 15(c) requirements of the applicable relation back doctrine. Because the statutes of limitations applicable to many of plaintiffs' claims expired on December 21, 2004, two years after decedent Felipe Max Galloway was shot, the amendments now proposed by plaintiffs can only be considered if they relate back to the date of filing of the original complaint. See Owens v. Okure, 488 U.S. 235, 236 (1989) ("[C]ourts entertaining claims brought under 42 U.S.C. § 1983 should borrow the state statute of limitations for personal injury actions . . . ."); Idaho Code § 5-219(4) (two year statute of limitations for injury to the person and for wrongful death); Idaho Code § 6-911 (two year limit on claims brought under the Idaho Tort Claims Act).

The relation back provisions of state law do not necessarily control in a § 1983 case. Defendants rely on Merritt v. County of Los Angeles, 875 F.2d 765 (9th Cir. 1989), where the Ninth Circuit did plainly state that "the relation back provisions of state law, rather than Rule 15(c), govern a federal cause of action pursuant to 42 U.S.C. § 1983." Id. at 768. However, the 1991 Advisory Committee Notes further explain that Rule 15(c)(1) was designed to allow other relation back doctrines to apply only when "[the applicable] law affords a more forgiving principle of relation back than the one provided in [the federal] rule." Fed. R. Civ. P. 15(c)(1); see also Motley v. Parks, 198

F.R.D. 532, 534 (C.D. Cal. 2000). Under the circumstances of this case, Idaho's relation back doctrine is more restrictive and thus should not apply here.

The Idaho Supreme Court requires that proposed additional defendants have had notice of the pending suit on or before the filing deadline, regardless of provisions that allow service of defendants at a later date. <u>Wait v. Leavell Cattle, Inc.</u>, 136 Idaho 792, 795-96, 41 P.3d 220, 223-34 (2001). Under federal Rule 15(c)(3), however, the notice requirement can be satisfied by events occurring during the 120 day period for service, even if the actual statute of limitations has already run. Fed. R. Civ. P. 15(c)(3); <u>G.F. Co. v. Pan Ocean Shipping</u>, 23 F.3d 1498, 1501 (9th Cir. 1994).

In addition, the Ninth Circuit recognizes the "imputed notice"/"community of interest" theory which, for the purpose of applying relation back, allows courts to infer notice when the party actually notified and the party assumedly notified "are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other.'" <u>Id.</u> at 1503 (quoting 6A Charles Miller, et al., <u>Federal Practice and Procedure § 1499</u> at 146 (2d ed. 1990)). Here the proposed additional officers are all employees of the City of Chubbuck, which received timely notice.[1] Additionally, the officers will be represented by the

---

[1] While not clear from the record, the city acknowledged during oral argument that it was served before the 120 day service period expired on April 24, 2005. <u>See</u> <u>Schiavone v. Fortune</u>, 477 U.S. 21, 29 (1986) ("Timely filing of a complaint, and notice within the limitations period to the party named in

4

same attorneys who represent the city and who are also representing other individually named co-workers.[2] Cf. id. (noting the significance of shared counsel when assessing whether a "community of interest" exists). Thus, while Idaho law would impede plaintiffs' relation back efforts based on the timing and means by which the officers received notice of this suit, federal law does not. Federal relation back is consequently more permissive in this instance and the court must therefore apply Federal Rule of Civil Procedure 15(c).

Rule 15(c)(3) permits relation back when a party seeks to change "the party or the naming of the party against whom a claim is asserted" and

> within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Fed. R. Civ. P. 15(c).

---

the complaint, permit imputation of notice to a subsequently named and sufficiently related party.").

[2] The Ninth Circuit has not applied the "community of interest" approach to an employer/employee relationship; however the Fifth Circuit, in a case cited by plaintiffs, has. Jacobson v. City of New Orleans, 133 F.3d 315, 320 (5th Cir. 1998) held that notice served on the city can be imputed to individual police officers, who will share the same government attorney and have an "identity of interests" with the city. The Third Circuit declined to follow Jacobson in Garvin v. City of Philadelphia, 354 F.3d 215, 227 (3d Cir. 2003) (holding that individual police officers, as non-managerial employees, are "not highly enough placed in the city hierarchy for us to conclude that their interests . . . are identical to the city's" (citation omitted)). However, in Garvin, unlike Jacobson and the instant case, individual officers were not initially identified in the timely complaint, making the shared interest analysis more difficult to apply.

5

In the Ninth Circuit, the mistake requirement is construed more liberally than in other circuits. Brink v. First Credit Res., 57 F. Supp. 2d 848, 856 (D. Ariz. 1999). Amendment is allowed in cases where "the previously unknown defendants were identified only after the statute of limitations had run." Id. (citing Kilkenny v. Arco Marine, Inc., 800 F.2d 853 (9th Cir. 1986); G.F. Co., 23 F.3d at 1503). Here, plaintiffs argue that they were not aware of Officers Frasure, Ellis, and Galloway's actual identities until they reviewed the documentation of the department's investigation into Galloway's death. (Pls.' Oct. 5, 2005 Amended Mot. to Am. Compl. ¶¶ 1-3.) These documents were received on August 18, 2005, in response to plaintiffs' June 15, 2005 discovery requests. (Id. ¶¶ 1-2.) In anticipation of discovery of such information, plaintiffs named John Doe defendants to account for wrongs allegedly committed by officers who, until the investigative report arrived, were anonymous. Allowing plaintiffs to substitute the officers' actual identities now that defendants have finally provided the information necessary to identify them is therefore proper.

The additional defendants will not be prejudiced by being brought into the suit, as their attorneys have been at work on defenses for the city and other officers from the beginning. In addition, discovery is open until April 3, 2006, so counsel will have ample time to conduct the necessary inquiries specifically related to the new defendants. (June 8, 2005 Case Management Order ¶ 5.) Likewise, plaintiffs' correction of the amendments under which the § 1983 claims are brought will not prejudice defendants, as the language of the complaint can be

fairly read to have put defendants on notice that plaintiffs' claims were founded on a violation of Galloway's Fourth, rather than Eighth, Amendment rights.[3]  Similarly, other minor changes in the language of the complaint do nothing more than further define plaintiffs' allegations.  The October 5, 2005 version of the amended complaint is therefore acceptable.

### B.  Cummings' Motion to Dismiss

On a motion to dismiss, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the pleader.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Cruz v. Beto, 405 U.S. 319 (1972).  The court may not dismiss for failure to state a claim unless it appears beyond doubt that the pleader can prove no set of facts in support of the claim which would entitle him or her to relief.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

Cummings argues that this case should be dismissed because plaintiffs failed to post the bond required by Idaho state law in cases against law enforcement.  See Idaho Code § 6-610.  As plaintiffs correctly note though, § 1983 preempts Idaho's bond requirement.  See Hurley v. Marshal, No. 01-civ-

---

[3] Plaintiffs alleged that defendants negligently pursued Galloway's capture and used excessive force in effectuating his capture.  (Sept. 8, 2005 Second Am. Compl. ¶¶ 20-22.)  The phrasing of plaintiffs' claims is actually more consistent with a Fourth Amendment, rather than an Eighth Amendment, excessive force claim.  Caballero v. City of Concord, 956 F.2d 204, 206 (9th Cir. 1992) (holding that while due process cases may require deliberate indifference, a § 1983 action involving Fourth Amendment rights can be based on negligence); see also Jones v. Natesha, 151 F. Supp. 2d 938, 942 n.3 (N.D. Ill. 2001) (denying defendant's motion to dismiss when plaintiff specified the wrong amendment as the foundation for a § 1983 claim because the language of the complaint supported the proper, albeit unmentioned, legal grounds for suit).

5149, 2002 WL 31720305, at *8-11 (Idaho Dist. Ct. Nov. 22, 2002) (applying <u>Felder v. Casey</u>, 487 U.S. 131 (1988)). States cannot "condition[] the right to bring suit against the very persons and entities Congress intended to subject to liability" by imposing bond requirements applicable only in suits against government officials. <u>Felder</u>, 487 U.S. at 144. Plaintiffs therefore did not need to supply a bond before filing their § 1983 action.

Likewise, plaintiffs persuasively argue that a bond requirement is not necessary in cases brought under the ITCA. In <u>Kent v. Pence</u>, 116 Idaho 22, 23, 773 P.2d 290, 291 (App. 1989), the court held that the provisions for awarding costs and attorneys' fees in the ITCA displace provisions in § 6-610. Because the bond requirement exists to secure the no-fault award of costs provided by § 6-610, plaintiffs argue that the requirement does not apply in ITCA cases where costs and attorneys' fees, pursuant to <u>Kent</u>, are governed instead by § 6-918A. (Pls.' Opp'n to Defs.' Mot. to Dismiss at 6-8.) Defendants' cite no authority holding otherwise and argue only that § 6-610 has never been repealed. While true, this argument fails to respond to plaintiffs' claims that § 6-610 does not apply in this context. Plaintiffs' failure to post a bond consequently does not impact their ability to bring state law claims against defendant Cummings under the ITCA.

C.   <u>Cummings' Motion for Summary Judgment</u>

As an alternative to his motion to dismiss, defendant Cummings also individually moves for summary judgment. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

8

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  Additionally, the substantive law governing a case determines the materiality of a fact.  <u>T.W. Elec. Serv., Inc. v. P. Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987).  In general, "police misconduct cases almost always turn on a jury's credibility determinations" and consequently, "summary judgment . . . in excessive force cases should be granted sparingly."  <u>Santos v. Gates</u>, 287 F.3d 846, 853 (9th Cir. 2002).

Plaintiffs do not allege that Probation and Parole Officer Cummings personally participated in the deprivation of Galloway's constitutional rights.  They instead argue that Cummings, as a supervisor, should be held individually liable under § 1983 for the constitutional violations committed by Officer Merica, the officer who actually applied the allegedly unreasonable force against Galloway.

In a § 1983 case, supervisor liability can attach when the supervisor's own conduct was the "moving force" behind the injuries inflicted by his subordinates and "the actor [knew] or reasonably should [have known that his leadership] would cause others to inflict the constitutional injury."  <u>Redman v. County of San Diego</u>, 942 F.2d 1435, 1447 (9th Cir. 1991) (quoting <u>Johnson v. Duffy</u>, 588 F.2d 740, 743-44 (9th Cir. 1978)); <u>Paiva v.

City of Reno, 939 F. Supp. 1474, 1489 (D. Nev. 1996).  The Ninth Circuit recognizes a supervisor as the moving force when (1) his "own culpable action or inaction in the training, supervision, or control of his subordinates" resulted in injury, (2) he acquiesced in the constitutional injuries complained of, or (3) his conduct shows "a reckless or callous indifference to the rights of others."  Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (citations omitted).

Plaintiffs' arguments rely primarily on the first theory of liability under Larez: failure to supervise or control.  (Pls.' Mem. Opposing Def.'s Mot. to Dismiss at 12.)  Central to this assertion is plaintiffs' claim that Cummings was "the officer in control of the entry and apprehension of [Galloway]."  (Id.)  On this point, the evidence, such as it is, is in dispute.

The evidence before the court at this point largely consists of the investigatory reports compiled by the Bannock County Sheriff's Office and offered by plaintiffs.  (Sept. 30, 2005 Wood Decl. Exs. 1-3.)  While defendant Cummings expressed some doubts about the admissibility of such evidence, he did not object to admission of the reports.  (Def. Cummings' Reply Mem. at 4.)  Indeed, he relied on statements in the investigative report in defense of his motion.  (See id. at 5-6.)  The court can therefore rely on the arguably hearsay statements of the officers interviewed in the wake of Galloway's shooting because "district courts in the Ninth Circuit must consider even inadmissible evidence at the summary judgment stage unless a party has moved to strike the evidence or has otherwise objected to it."  Young v. Allstate Ins. Co., 296 F. Supp. 2d 1111, 1114

(D. Ariz. 2003) (citing Pfingston v. Ronan Eng'g Co., 284 F.3d 999, 1003 (9th Cir. 2002) and Scharf v. U.S. Attorney Gen., 597 F.2d 1240, 1243 (9th Cir. 1979)).

Moreover, "[a]t the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents." Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003). Here, the officers' statements considered were based on their own personal knowledge and could therefore be testified to at trial or, if the officers become unavailable to testify, admitted as statements against interest pursuant to Fed. R. Evid. 804(b)(3). Therefore the same evidence would likely be admissible, albeit in another form, at trial and thus may be considered at this time.

Defendant Cummings stresses the following facts. Galloway was shot by a City of Chubbuck police officer during the execution of a plan for entry formulated by the SRT,[4] which was also comprised of Chubbuck police officers. (Sept. 30, 2005 Wood Decl. Ex. 1 at 9 (Cummings Interview), 33 (Bill Guiberson Interview).) These actors are not the "subordinates" of Cummings, a Probation and Parole Officer with the Idaho State Department of Corrections. Plaintiffs' own second amended complaint states that Chief Webb, and not Cummings, "had ultimate authority over the actions of the SRT in effecting Galloway's

---

[4] During the investigation into the shooting, several officers explained that while the search was pursuant to Probation and Parole's interest in capturing a parole absconder, the decision on how to enter the house was made by the SRT. (Sept. 30, 2005 Wood Decl. Ex. 1 at 9 (Cummings Interview), 33 (Bill Guiberson Interview).) Moreover, Officer Frasure claimed responsibility for "the entry plan," which was executed by a team run by Officer Severe. (Id. at 37 (Frasure Interview).)

11

arrest." (Sept. 8, 2005 Second Am. Compl. ¶ 13.) Plaintiffs, on the other hand, cite statements from Cummings' incident report interview, in which he "indicated" that the operation at issue "was a Probation and Parole search and that he was maintaining control of the search." (Sept. 30, 2005 Wood Decl. Ex. 1 at 9 (Cummings Interview).)

The undersigned has previously held that an alleged supervising officer's "presence on the scene is sufficient to create a triable issue concerning his liability as a supervisor." Carrasco v. City of Vallejo, No. S-01-968, 2001 WL 34098655, at *7 (E.D. Cal. Sept. 6, 2001 ). The parties here do not dispute that defendant Cummings was present at the shooting and had at least some, if not total, involvement in formulating the plan that resulted in Galloway's death. Cummings actual role and degree of control is contested and must be resolved by a jury.

Further, plaintiffs' evidence suggests that defendants failed to consider less aggressive means for executing the probation warrant. Other courts have held that evidence "that the entire operation was substandard and likely to result in a shooting" can create a triable issue of fact as to whether supervisors and other non-shooting officers should face § 1983 liability. Strachan v. City of Federal Heights, Colo., 837 F. Supp. 1086, 1091 (D. Colo. 1993). Plaintiffs here have gathered such evidence and argue that "alternative measures short of a forcible, knowingly dangerous confrontation" may have been appropriate given the circumstances. (Pls.' Opp'n to Defs.' Mot. to Dismiss at 2.) Plaintiffs note that officers overlooked opportunities to determine if Galloway was in fact armed and cast

doubt on defendants' theory that forced entry was necessary to protect the neighborhood, given that the neighbors were never notified or evacuated. (<u>Id.</u>)

Although defendant Cummings' evidence appears to the court to be the stronger and more persuasive, resolution of these conflicting accounts and theories is for the jury to determine, not for the court to decide at this stage of the proceedings. Because there are disputed issues of material fact, summary judgment must be denied.

IT IS THEREFORE ORDERED that:

(1) plaintiffs' motion to amend the complaint, based on the October 5, 2005 corrected complaint be, and the same hereby is, GRANTED.

(2) defendant Cummings' motion to dismiss plaintiffs' § 1983 and state law claims, as pertaining to him, be, and the same hereby is, DENIED.

(3) defendant Cummings' motion for summary judgment on plaintiffs' § 1983 and state law claims against him be, and the same hereby is, DENIED.

DATED: November 18, 2005

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE