# Review
# Blackhawk vs City of Chubbuck

Prepared for
T. Jason Wood, ESQ

David L. Neal
2509 E - 3800 N
Twin Falls, Idaho 83301
Phone 208-735-0335

April 2006


EXHIBIT B

There are "generally held" national standards of operational performance for SWAT teams (National Tactical Officers Association) that operate within the milieu of domestic law enforcement. Certainly, any "generally accepted" standards related to tactical solutions, operational concepts, weapons and logistics, command and control and selection will also depend upon conformity with law and ethical priorities. Typically, there is more than one way or one tactical solution, or more than one single system, and seldom does the term "always do it this way" apply. There are, however, hard and fast concepts that should always apply. These are found in many nationally accepted model policies and in recognized training programs. Examples are numerous and varied:

- **Rapid Response** – A process that will facilitate a streamlined and rapid reaction of personnel and equipment moving to the scene of a critical situation.

- **Streamlined Chain of Command** – A system of leadership and decision making that is workable, flexible and accountable and can change pace with the dynamics of the event.

- **Anticipate the Suspect's Options (Risk Analysis)** - A concept of evaluating what the suspect can be expected to do and putting a tactical response in place for each option that can reasonably be anticipated.

- **Verbal Efforts, Negotiations, and Communications** – Communications and/or negotiations with a suspect are standards that case law requires law enforcement to apply in most situations. Verbalization is one of the first steps in any use-of-force continuum.

SWAT teams are expected to respond to critical incidents with a higher degree of control, discipline and preconceived options than uniformed patrol officers. Mostly, tactical officers have an opportunity to utilize information provided by patrol officers, a time-line for planning, logistical and technical resources, multiple officers deploying in support of each other and reliance on past training and past practice that has proven successful.

SWAT team training and procedures are the second most important component of an outstanding tactical unit. The selection of personnel is obviously the first and primary requirement of a successful tactical unit. Weapons are not the primary components for success, but the people who use the weapons are.

Individual team member's accountability starts at the top, with the commander. Each team member should demonstrate honesty, integrity, department loyalty, courage, and meet the team standards and qualification requirements. Conduct, on and/or off duty, that is detrimental to the department (and therefore to the team) should be justification for removal from the team. The leadership of the team should <u>recognize</u> breaches of conduct <u>when</u> they occur, and with the approval of the Chief of Police remove the officer when necessary.

When a tactical situation results in a negative outcome, it does not necessarily indicate problems or that the SWAT team performed poorly. By the same token, a positive outcome, with the suspect submitting to arrest with no further injury to any party occurring after the team was deployed, does not automatically mean they performed well.

---

A review of the reports forms the basis for the reviewer's concern over the various issues surrounding the leadership, supervision, training, and the operation of the team on the **MAX GALLOWAY** event. These concerns are in addition to those already identified in the Plaintiff's complaint.

- **Time was not the critical factor**, as there was containment on the residence. There is always a feeling of being rushed in a call out. It is the commander's responsibility to slow things down.

- **Risk Analysis**

  Tactical decision makers should have discussed the pros and cons of all available options. There is no tactical option that has a guarantee of a positive outcome. However, careful planning, discussion and rehearsal increase the potential for achieving a successful resolution.

  Intelligence information cannot be accepted as factual, regardless of the source. It must be evaluated and as much as humanly possible, verified.

  Why did P& P and other officers search the residence a few days earlier, with the same intelligence except the "car assault", without using SRT? Did they use the same type of entry?

  Were there enough officers at scene to handle the situation? I don't believe so.

- No document of operation planning (checklist) used addressing:

  Situation
  Mission
  Execution
  Administration and logistics
  Command and communications

  The importance of proper planning cannot be over emphasized –
  **LIVES DEPEND ON IT!**

3   Neal

- The 5 C's where not followed:

    Control – the situation
    Communicate – with assisting units
    Contain – the scene with inner and outer perimeter
    Coordinate – response routes, positions and duties of assisting units
    Command – someone must take charge

- **Dynamic entry** – to be successful:

    Surprise, speed, ferocity, overwhelming manpower and firepower are required.

    A planned dynamic entry may quickly become a barricaded suspect situation if:

    - The initial entry is delayed for a substantial period of time.

    - The entry into a room or area is delayed.

    - Your tactical advantage is seriously compromised.

    A planned dynamic entry may quickly become a barricaded suspect situation. Tactical retreat is always an option; retreat, reconsider and redeploy.

    GALLOWAY was no threat unless police officers created a situation that changed the dynamics by forcing a premature confrontation. A confrontation with an armed suspect, who could be anticipated to shoot, was not avoided, but was invited should the suspect decided to shoot. If the action or tactic decided upon is placing officers in jeopardy to the benefit of the armed suspect, it is not acceptable. The SRT team used tactics that would create confrontation. **Time, Tactics, Talk.**

- <u>Entry Techniques</u>

    Contain and call out – most commonly used for high-risk arrest, used when there is no concern that evidence can be destroyed.

    "What if" contingency plans should have been developed.

- **Distraction techniques and devices**

    Are used to gain/maintain or recreate the advantage of surprise (less than 5 seconds). The primary purpose is to resolve situations safely without the need for greater levels of force.

- **Chemical agents**

    Most commonly used in barricaded suspect situations

    Purpose is to incapacitate the suspect and cause him to emerge in a condition in which he is incapable of assault action. If negotiations prove ineffective, chemical agents are strongly recommended as a tactical option <u>before</u> a forced entry is attempted.

- **Less lethal Impact projectiles**

    Should be considered whenever the use of less lethal options would assist in enabling an arrest, safely controlling a violent person.

- **Negotiations**

    It would have been proper and reasonable to use a significant effort to establish dialogue with the suspect in an effort to reduce the level of confrontation in the best interest of the officer's safety.

- **Command and Control**

    Who was the incident commander?

    When a team leader tries to do too much, he opens himself up to mistakes. A team leader's duty is to lead the team through the delegation of team responsibilities. There are times during entries and tactical movements that a team leader may be required to step into a position to cover another officer's movement or accomplish a task that is exigent in nature. The majority of what a team does physically and operationally is automatic based on training or is directed by a team leader when an action to be taken is recognized. The two entry team leaders did not command or control the entry.

    One of the cause factors could be the failure to delegate or not having enough tactical knowledge to delegate responsibilities to cover, verbalize, deploy and carry out the many responsibilities.

- **Communication**

    Team leader failed to ensure the containment personnel had received the plan. He failed to notify them of when the entry was to be made. This is basic SWAT procedure. This could have ended in another tragedy.

- **Training**

    Need to look closely at the actual total training hours and the number of hours on building entries. How much training did they do for drills for compromised entries? Was there ever any training on "wrestling a suspect" in full gear, with gun in hand? There was no rehearsal prior to the deployment.

    With the training records provided, I don't feel MERICA has received enough situational training to be a "point man."

Review
Blackhawk vs City of Chubbuck
Supplemental

Prepared for
T. Jason Wood, ESQ

David L. Neal
2509E 3800 N
Twin Falls, Idaho 83301
Phone 208-735-0335

May 2006

I received, and have reviewed, the additional deposition transcripts of Martin Frasure and Richard T. Webb. Information from the documentation received so far is the basis for forming my conclusions. The foundation for my opinions comes from years of SWAT team training experiences and actual call outs; 10 of those 12 years as the team leader. Please see a more detailed list of my qualifications in an earlier requested document (my resume), which includes my position as a certified P.O.S.T. instructor in officer survival tactics, and over twenty (20) years as a supervisor reviewing officer's use of force.

The National Tactical Officers Association (NTOA) was established in 1983. It is a non-profit organization committed to the advancement of law enforcement and corrections special weapons and tactics and crisis negotiations team, and high risk patrol.

NTOA offers suggested guidelines and policies for law enforcement tactical teams. I have used these suggestions as a comparison to the Chubbuck Police Department's S.R.T. manual. I found many best practices, policies and procedures included in the S.R.T.'s manual.

Using S.R.T.'s manual, I found most of the guidelines were not followed by the S.R.T. on December 21, 2002, involving the Max Galloway attempted arrest. I will provide a report to you in the near future, detailing those guidelines. Just as important as it is to having established guidelines, is the importance of constant training on those guidelines. Reviewing the documentation of training records for the S.R.T. for the two years prior to the incident, I do not see this having occurred.

Tactical decision makers should have discussed the pros and cons of all available options. There is no tactical option that has a guarantee of a positive outcome, but careful planning, discussion and rehearsal add to the potential for achieving a successful resolution.

S.R.T. supervisors developed a tactical plan, which predictably created confrontation. The failure to apply a reasonable tactical plan unnecessarily endangered the officers involved.

The incident/tactical commanders have the responsibility of knowing the plan is tactically sound, all predictable responses on the part of the suspect are considered, and contingency plans have been put into place.

The entire approach to this event should have been handled from the perspective of a typical barricaded suspect. The entry team tactic was compromised at least three different times during this incident. The entry team leaders did not redeploy, but engaged in confrontation as opposed to using less lethal means, such as verbalization. Basic SWAT training involves the uses of less-lethal tools that could have been employed. The S.R.T. chose to ignore utilization of these tools as contingency plans.

2

It would have been proper and reasonable to use a significant effort to establish dialogue with the suspect in an effort to reduce the level of confrontation. This would have been in the best interest of others in the residence, as well as add safety to the officers.

I believe the mindset of this entry is best expressed by Richard Webb in his deposition, "We're trained that once hot pursuit takes place, you follow through on it". This has gotten many officers killed and injured over the years. He also stated "this is taught in the police academy". I have been a certified Idaho P.O.S.T. officer's survival instructor for a number of years and this is not taught. I checked with recent graduates from the P.O.S.T. academy who as well confirmed they were not taught this as a tactic.

This, too, goes against basic SWAT training of containment and control of the situation. Webb talks of the necessity of split second decision making. I agree, but that is where training and having contingency plans in place reduces the errors in using quick judgments.

It is also my judgment that by the amount of actions taken by Galloway during the entry, it was not accomplished in "split seconds," but in a "number of seconds."

I will follow up as quickly as possible with the report of Chubbuck's guidelines that were not followed by S.R.T.

*David L. Neal*
14 May 06

3

Review
Blackhawk vs City of Chubbuck
Supplemental

Prepared for
T. Jason Wood ESQ.

David Neal
2509E 3800N
Twin Falls, Idaho 83301
Phone 208-735-0335

June 2006.

I received and reviewed R. M. McCarthy's case review of Jackie Blackhawk, et al. v. City of Chubbuck, et al. I have knowledge of Mr. McCarthy and hold the highest respect for him in the world of SWAT teams. I attended a course he taught in the early 1990s in Reno, Nevada, and have been an informal student of his over the years, studying many articles he authored.

Not being a professional consultant I didn't detail my training background and instructing hours over the years as thoroughly as Mr. McCarthy. For example, I attended a week course at the California Specialized Training Institute, San Luis Obispo, where Mr. McCarthy is an instructor, in the 1980's, and my training records provided show many of the numerous courses I not only attended, but taught over the years. But for now I will let my submitted resume stand as is.

I believe a reader of my review and Mr. McCarthy's will notice some similarities. This is due in part to an article of Mr. McCarthy's that I chose to use the matrix from in the past. In fact, I have used a couple of his formats as they best capture the overall concept of procedures involved in SWAT operations.

I will follow Mr. McCarthy's format in his review to more easily compare our opinions on the different issues mentioned.

I. The following are my opinions in the case and the basis and reasons for those opinions:

S.W.A.T. is an acronym for Special Weapons and Tactics. I feel the most important part of the acronym is the development of *tactics* to handle high risk situations. Any weapon system can be defeated with good sound tactics in place. This requires procedures and training to become successful.

When a law enforcement agency chooses to field a SWAT team, they then assume the responsibility to support the team in basic necessities such as leadership, resources, and training. Just giving a name to a group such as, SWAT, SRT, SOG, etc., does not in itself make it one. There is an accepted expectation that SWAT team members will respond to critical incidents with a higher degree of control and discipline than the average street officer.

A. **Rapid response** is having a practiced system of when to notify the team, how the members are to assemble and move necessary equipment to an incident location. This does not imply that there needs to be an immediate entry upon arrival at the scene. There is much information to be obtained, verified, distributed and plans made based upon risk analysis.

In most after incident reviews, it is not one obvious event that causes a situation to end in the manner it did, but a matter of many small events, that when linked together influenced the outcome. When an individual is pushed in a stressful situation and not using a checklist, that person fails to foresee many of these smaller events. As I have

1

expressed before, there is always a feeling of being rushed at the scene to act. If this feeling is allowed to influence judgments, then many errors can be predicted in the outcome. There is a saying in risk management, "if it is predictable then it is preventable."

**B. Streamlined chain of command** is advantageous. In this case command and control was not maintained. Chief Webb, who is identified as the Incident Commander, did not stage himself in a position where he could maintain situational awareness. Because of an inadequate number of officers to form a perimeter, he had to act as a member of the perimeter. As the incident unfolded there was a break down in communications and he did not receive the necessary information as Incident Commander to control the responses needed. He did not hear the report of the perimeter officers being compromised and stated he would have looked at another plan had he known.

Chief Webb stated in his deposition he was not aware a marked police unit was visible in front of the 190 Henry residence working surveillance. "He responded to the location because he was the only one available to help with the surveillance as there were not enough officers." He stayed close to his car until he heard SRT arrive, because he was the only one there until joined by Probation and Parole officers, and "all we did is work surveillance."

He had no radio communication with members of SRT or other perimeter officers. He actually became engaged with the suspect's attempt to escape from the residence. Chief Webb also stated he had no knowledge of the SRT's plan before the entry was made.

It is my opinion, based on Chief Webb's statements, he was not in command and control during the situation, but was performing the duties of an inner perimeter officer.

Team Leader Randy Severe, after the initial entry, became focused on covering two individuals encountered in the living room. He was mainly occupied with providing security and was not able to remain free to supervise officers' actions elsewhere in the residence.

Officer Frasure, Assistant Team Leader, states his duty was "in charge of the entry team," "like supervision within"; total care of what's happening within (residence). He later reports that after the entry, officers ahead of him slowed or stopped. He then turned around and went outside to support other personnel.

As a result of all the individual actions of the designated commanders, no one remained in a posture of command and control throughout the situation.

C. The basic concept of SWAT is to anticipate the suspect's actions. The Incident Commander and the tactical team leader have the responsibility of performing risk analysis. This involves predicting all possible responses on the part of the suspect, any other dangers that might be present, and having contingency plans in place to counter-act them. This is then incorporated into the operational plan for coordination.

2

Chief Webb, Incident Commander, had no knowledge of the plans. It was to be relayed to him, but it never happened. Again, I am reaffirming Chief Webb's response; if he had known about the report of the perimeter personnel being compromised, he would have looked at another plan. As revealed by the SRT members in the planning briefing, the only plan considered was to make a dynamic entry.

No other contingency plans were discussed or planned for. This is verified by team members not being prepared to use other less lethal tactics or weapons during the encounter. Examples:
* CS gas was left at the office and officers were not carrying gas masks;
* Officer Merica's response to the question about other options before opening the bedroom door; he couldn't come up with any and dismissed the question stating that due to the time there were none;
* McCArthy lists four reasons that the plan of dynamic entry was chosen; but no consideration is given in the planning as to what possible actions might be taken if Galloway failed to follow verbal commands.

Looking at the unverified intelligence given to the SRT members at the briefing, they have every right to consider that Galloway may be armed. However, looking at the history of the law enforcement encounters with him, Galloway's reaction was to flee. No law enforcement officer ever reported seeing a weapon or had a threat of use of a weapon against them. So, in addition to planning for the threat of a weapon, the planning stage should have discussed how to contain and prevent him from escaping.

No officer likes lengthy, time consuming arrest situations. It requires all kinds of resources and additional costs. But dealing with a potential life threatening situation to all parties involved, this should not drive the decision makers to forego other options first. I agree with Mr. McCarthy, once you force an action you are forcing a reaction. I will discuss this further later.

D. The concept of verbal efforts, negotiations and communications.

I agree with Mr. McCarthy's statements. However, once Galloway barricaded himself in the bedroom and some time passed, *not* split-seconds, there was another opportunity to communicate to him, while not directly exposing the officers to direct confrontation. Negotiations are designed to buy time on the part of law enforcement or to expose weakness on the suspect's part. I believe it would have been appropriate to try again.

E. Five components of an operation plan are: (my viewpoint)

Situation: A dangerous reported (not verified) armed felon is avoiding arrest and endangering the public. He has been located and arrest is required.

Mission: To arrest the suspect and avoid injuries to all and not violate the suspect's constitutional rights.

3

**Execution:** To coordinate the efforts to apply the operations plans successfully with the goal of arresting the suspect.

**Administration and Logistics:** To bring the appropriate personnel, equipment and coordination to the event and apply these necessities correctly.

**Command and Communications:** Supervisors and leadership are utilized and there is interaction through radio and tactics that provides a coordinated effort.

In my judgment all law enforcement participants knew the situation and were aware of the mission. However, not all officers were aware of their tasks or actions to be taken. The execution part broke down with the failure of continued command and control. My examples have already been stated.

I do not agree that there were enough personnel or resources at the scene. There were not enough officers to perform perimeter duties causing the Incident Commander to become engaged in that task. Insufficient SRT numbers making the entry occupied the team leader. No members were available to perform a dynamic entry to immediately clear the basement or provide cover to the rear rooms past the bedroom where Galloway was barricaded. I also point out there were <u>no emergency medical services</u> staged in the area.

I have already given examples of breakdowns in the communications and control.

The statement of "had the suspect complied with any of the directions given to him by the officers, he would not have been shot," speaks for itself. However, this is why SWAT teams are called for in high risk situations. It is with the anticipation the suspect will <u>not</u> comply with verbal commands. This is where the special tactics and other less lethal tools may be effective.

If we accept "it is just up to the suspect to obey every command" or "we can act in a hostile manner," why don't we accept that law enforcement can just confront them with weapons at the ready and say, "it's up to you, live or die?" This gives me the image of the old western marshals on Main Street at high noon, telling the bad guy to draw.

There is no doubt Officer Merica went beyond his own personal safety in the confrontation, which concerns me for him. I feel he needlessly exposed himself by standing in full view in the middle of the hallway when Galloway first appeared to him. I am not criticizing his courage, but his basic officer survival tactics in the use of cover and concealment. I believe this relates to lack of proper training and inexperience, an issue that is reflected in the SRT's training records.

Officer Merica's patrol and SRT years of experience are about the same, four years. He states he had no basic SWAT training other than training provided by SRT by the month. He relies on basic Police Officers Standards and Training, which is entry level street officers training and not SWAT tactics.

4

There were some references to contingency plans in reports of the SRT members, as a part of their reactions to be taken in the situation. No officers have clearly stated what they are or given examples of when they would have been employed. SRT's procedure manual gives outlines for different situations. The last two years of training records prior to the shooting does not show any training of these plans.

In my opinion, less than 10 hours of training in those two years were spent drilling in entry techniques. There was a heavy emphasis on shooting skills and physical training. Tactic skills, as do shooting skills diminish and actually, need to be refreshed more than shooting skills.

Officer Merica stated, as to the action of Galloway jumping into the bedroom, "I at first was stunned because usually we were handcuffing people and we're done." This indicates a need for training to expect the unexpected.

At the point where Galloway goes behind closed doors, the element of surprise is clearly over. Officer Mercia stated he heard Galloway in the bedroom, proven by his attempt to get out another window and then taking the time to locate and throw a lamp out the window at officers. This took seconds, not split-seconds.

Officer Merica was thinking Galloway was getting a gun. He states "we didn't know if he was getting a gun and coming out after us. We still had the element of surprise on our side." I can't disagree more; any surprise is gone at this point.

Officers Merica's and Quinn's responses were to advance down the hallway and to the door. No cover is provided in the hallway as there are rooms further down that are not secured. The next action is for the officers to open the door. There clearly was enough time for "Galloway to have obtained a weapon and be prepared to use it on anyone in the doorway. Using the articles of reaction time provided by Mr. McCarthy, Officer Merica or Quinn would not have been able to react soon enough to prevent Galloway from shooting if he had the weapon.

Again, I am not personally criticizing Officer Merica, but do place responsibility on his lack of past training and experience. He placed himself in a very dangerous position. It has been my experience in many training exercises that in face to face confrontation with an armed suspect who is willing to shoot the first officer exposed, the officer usually loses.

A question was presented Officer Merica about other options at the point before opening the door. His answer reveals again the lack of training or experience in when to apply contingency plans. There were no thoughts of retreat to cover, slow things down, or using any other less lethal options.

F. In my opinion, because the report of the possibility of being compromised, the situation should have been treated as a barricaded suspect. The fear of safety for others

5

being taken as hostages is not reduced if the team is compromised and the team makes entry. Certainly when Galloway was in the bedroom, behind a closed door, it turned into a barricaded suspect.

The choice of dynamic entry relies on surprise, speed, and overloading the senses of the suspect. In my experiences, the most you may have is 5 seconds, usually less. SRT's dynamic entry certainly was stopped at the location of the kitchen/living room entrances. At that point the "flow" had been stopped and surprise, speed and overloading the senses failed to exist.

As Mr. McCarthy states dynamic entries are usually used in hostage rescue. Galloway was the bedroom and had no hostages or ever was there a belief he may have had one.

Galloway did refuse to obey lawful orders, which was to be expected. Other means to attempt the arrest where still available. Mr. McCarthy submitted a Use of Force Model as reference material from the University of Illinois Police Training Institute. It is used as a guide for a reasonable officer's response to a reasonable officer's perception.

Mr. McCarthy summarizes "the opportunity to confront the suspect and verbalize commands to take him into custody occurred. The suspect refused the opportunity to comply with lawful order."

This would fall into the bottom end of the scale should the suspect choose to comply. However, there are other options given to the officers, using less lethal means to attempt to arrest a non-compliant, unarmed individual, in the middle of the scale.

Taking into consideration the history of Galloway's non-compliance with the show of force and verbal command from police, I fail to see any planning considered on the part of SRT in anticipation of mid-level resistance. It was either comply with the lawful orders or face the possibility of being shot.

G. My judgment of not enough officers at the scene has already been given. When a suspect is confronted by armed officers and given commands to surrender, it is asking for a reaction. The only option an armed officer had to respond with is his weapon if he feels threatened. That's why less lethal options should have been considered. All the reactions discussed by Mr. McCarthy are possible, but in this case Galloway's first response was to retreat into the bedroom and attempt escape. The officers had no other plans in mind but to follow him. Again, I feel training and planning issues caused this.

H. Referring to Mr. McCarthy's statement of any sudden radical movement from the floor by Galloway could be interpreted as to a movement to attack the officer; law does not give the officer justification to use lethal force on the unarmed suspect. Ability, opportunity and jeopardy come in demand. Officer Merica exposing himself fully in the hallway and not using as much cover and concealment as possible, increases his chances for injury.

6

Accepting the fact that when the suspect left the officer's view he may have been arming himself, I again question the officer's training and experience, to expose himself and openly confront the suspect again. This is extremely dangerous to the officer.

I. Mr. McCarthy is posing the question "why would a suspect do that?" His answer is, the suspect is a criminal who is committing criminal acts. There is no logic on the suspect's part. If criminal actions were logical, then arrest situations would be easy. SWAT tactics have been, and continue to be, developed to deal with high risk situations caused by illogical actions of individuals being arrested.

There is no more dangerous and tougher job in law enforcement than being involved in high risk SWAT operations. That is why it is imperative that sound procedures and practices be in place and all members be highly trained and disciplined in those procedures. **To be good at performing those tasks under extreme stress, they have to be practiced and practiced.**

The responsibility of giving nothing but the best in leadership and resources to members of SRT falls squarely on the administrators of the agency. Anything less, gambles with their lives and successful outcomes.

I conclude my opinions at this time, should additional material or information become available, I reserve the right to supplement or update this opinion.

David R. Neal    13 June 06
Signed           Date

7