IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JACKIE BLACKHAWK, et al., ) | Case No. CV-04-629-E-BLW |
| Plaintiffs, ) | |
| ) | **MEMORANDUM DECISION** |
| v. ) | **AND ORDER** |
| ) | |
| CITY OF CHUBBUCK, et al., ) | |
| Defendants. ) | |

**INTRODUCTION**

The Court has before it Defendants' Renewed Motion for Summary Judgment (Docket No. 117). The Court heard oral argument on September 29, 2006. Thereafter, the parties filed supplemental briefs. The Court now issues the following decision.

**ANALYSIS**

**I.     State Law Claims**

Defendants assert that they are immune from Plaintiffs' state law claims based on Idaho Code §§ 6-610, 6-904A, and 6-904(3).

**A.     I.C. § 6-610**

Defendants argue that Plaintiffs' state law claims are precluded because

Memorandum Decision & Order - 1

Plaintiffs failed to post the bond required by Idaho Code § 6-610. Section 6-610 provides that before any civil action may be filed against any law enforcement officer, when such action arises out of, or in the course of the performance of his duty, the proposed plaintiff, as a condition precedent, shall file a written undertaking with at least two sufficient sureties in an amount to be fixed by the court.

In an earlier opinion in this case, Judge Shubb found that Plaintiffs' failure to post a bond did not impact their ability to bring state law claims against Defendant Cummings. Judge Shubb based his decision on *Kent v. Pence*, 773 P.2d 290 (Idaho Ct. App. 1989) and the fact that Defendant Cummings failed to respond to Plaintiffs' assertion that Idaho Code § 6-610 does not apply in the context of this case. (See Docket No. 60, p.8).

The remaining defendants have now come forth with case law to the contrary. Defendants point out that, subsequent to the decision in *Kent*, the Idaho Court of Appeals applied Idaho Code § 6-610 in *Greenwade v. Idaho State Tax Commission*, 808 P.2d 420, 422 (Idaho Ct. App. 1991). In *Greenwade*, the court specifically found as follows:

> There is an additional ground for affirming the dismissal of the claims against Sheriff Putman. Idaho Code § 6-610 requires that the prospective plaintiff in a suit

**Memorandum Decision & Order - 2**

against a law enforcement officer file an undertaking for costs. In *Pigg v. Brockman*, 79 Idaho 233, 314 P.2d 609 (1957), the Supreme Court held that this requirement is not jurisdictional and may be waived by the defendant; however, the Court also held that the statute is mandatory, so that where it is not complied with, the district court must dismiss the action when the appropriate objection is timely urged by the defendant. *Pigg*, at 238, 314 P.2d at 611. In this case, Sheriff Putman filed a motion to dismiss which included an objection to Greenwade's failure to post a bond. We conclude that this failure to post a bond provides an additional basis for affirming the dismissal of the claims against Sheriff Putman.

Thus, under normal circumstances, Plaintiffs' failure to post the bond required by Idaho Code § 6-610 would preclude Plaintiffs' state law claims. However, a court may waive costs, fees and security for indigents. Pursuant to Idaho Code § 31-3220, a party may file an affidavit stating that she is indigent and unable to pay the costs, fees and security associated with her case. Thereafter, the court can waive costs, fees and security if it finds, after informal inquiry, that the party is indigent. See Idaho Code § 31-3220(2).

Plaintiffs Jackie Blackhawk and Dorothy Gallegos have filed affidavits suggesting that they meet the standard for indigence. However, the affidavits fail to address all of the specific issues which must be addressed according to Idaho Code § 31-3220(3) before a court can make a finding that a party is indigent. For

**Memorandum Decision & Order - 3**

example, the affidavits fail to include information regarding spousal income and any real and personal property owned. It is important that Plaintiffs adhere to the specific requirements set forth in Idaho Code § 31-3220(3), and that the Court is provided with all required and relevant information, before the Court makes a determination as to indigence. Accordingly, the Court's first inclination was to allow Plaintiffs to file additional affidavits addressing all of the issues in Idaho Code § 31-3220(3). However, given the Court's decision to dismiss Plaintiffs' state law claims based on immunity, as outlined below, the bond issue is moot.

**B.    I.C. § 6-904A**

Defendants argue that Plaintiffs' claims are precluded by Idaho Code § 6-904A, which provides that:

> A governmental entity and its employees while acting within the course and scope of their employment and without malice or criminal intent and without reckless, willful and wanton conduct as defined in section 6-904C, Idaho Code, shall not be liable for any claim which . . . [a]rises out of injury to a person or property by a person under supervision, custody or care of a governmental entity or by or to a person who is on probation, or parole, or who is being supervised as part of a court imposed drug court program, or any work-release program, or by or to a person receiving services from a mental health center, hospital or similar facility."

In using the term *by* with reference to persons under supervision of a governmental entity, but using the term *by or to* with reference to persons on

**Memorandum Decision & Order - 4**

probation, parole, and receiving services from a mental health center, the Idaho legislature intended two very different types of immunity. The first immunizes the state and its employees against claims by third parties that they suffered injuries at the hands of probationers, parolees, mental patients, or anyone under the supervision of a governmental entity. The second immunizes the state and its employees against claims by probationers, parolees, and mental patients that they suffered injuries at the hands of government employees.

The Court is troubled by a statute which provides broad immunity against claims that a probationer, parolee or mental patient was abused, mistreated, battered or assaulted by police officers, probation officers or mental hospital attendants.[1] However, the statute seems clear in evincing this legislative intent.

---

[1] Indeed, this type of distinction may be subject to challenge under the equal protection or due process clauses of the 14th Amendment. However, that issue has not been addressed by Plaintiffs and the Court will not raise the issue *sua sponte*. Plaintiffs do suggest in one line of their supplemental brief that such a reading of the statute would not survive the constitutional challenge levied in *Harris v. State, Dept. of Health & Welfare*, 847 P.2d 1156 (Idaho 1992). However, in *Harris*, the Idaho Supreme Court did not address the constitutionality of a broad grant of immunity against claims that a probationer, parolee or mental patient was abused, mistreated, battered or assaulted by state employees. Moreover, the court in *Harris* found that the specific provision of the statute in question there was constitutional and one that "reflects a deliberately chosen policy. . . ." *Harris*, 847 P.2d at 1162. Thus, *Harris* neither contradicts this Court's interpretation of the statute nor resolves the question of whether the broad immunity afforded by the statute passes constitutional muster.

**Memorandum Decision & Order - 5**

And, there is no Idaho case law providing a contrary interpretation of the statute.[2]

The statute does not absolutely bar claims for injuries to a probationer, parolee or mental patient, but requires an additional showing that the governmental entity or employee responsible for those injuries acted with malice or criminal intent or engaged in reckless, willful and wanton conduct.   In this case, there is no assertion that Defendants acted with malice or criminal intent. However, the statute is written in the disjunctive, so that "[a] plaintiff may prove liability by showing either that the State acted with malice or criminal intent or that the State's action was reckless, willful and wanton." *Hunter v. State, Dept. of Corrections, Div. of Probation*, 57 P.3d 755, 759 (Idaho 2002).  Reckless, willful and wanton conduct, as defined in Idaho Code § 6-904C, "is present only when a person intentionally and knowingly does or fails to do an act creating unreasonable risk of harm to another, and which involves a high degree of probability that such harm will result." Idaho Code § 6-904C.

In this case, Plaintiffs suggest that it was wrong for Defendants to encounter Max Galloway, believing he was armed and dangerous, once they had lost the

_____

[2]The few Idaho cases which have addressed Idaho Code § 6-904A do not address the situation presented here, where a probationer suffered fatal injuries from a police officer during the execution of a probation violation warrant. *See e.g., Coonse v. Boise School District*, 979 P.2d 1161, 1164 (1999); *Harris v. State Dept. of Health*, 847 P.2d 1156, 1160 (1992).

**Memorandum Decision & Order - 6**

element of surprise.  Plaintiffs also argue that Defendant Merica knew Max Galloway did not have a weapon and that Merica shot Max Galloway while he was turning or running away.  Plaintiffs also submit the expert testimony of Captain Neal, who has over 37 years of law enforcement training.  Captain Neal testifies that Officer Merica did not receive enough situational training to be a "point man." (See Affidavit of David Neal, Ex. B, Expert Report, p. 6, Docket No. 129).  He further testifies that Officer Merica's lack of past training and experience was responsible for the outcome in this case.  (See Affidavit of David Neal, Ex. B, Supplemental Expert Report, p. 5, Docket No. 129).

With respect to Defendant Merica, Plaintiffs present evidence that the room in which Max Galloway was shot was small and well lit, that there is a lack of fingerprint evidence suggesting that Galloway never picked up the Right Guard can, and that Officer Merica shot Max Galloway while he was turning away or running.  These assertions are sufficient to create a genuine issue of material fact as to whether Officer Merica intentionally and knowingly engaged in a course of conduct which created an unreasonable risk of harm to Max Galloway, and which involved a high degree of probability that such harm would result.

The record is not, however, sufficient to support a finding that the other defendants engaged in reckless, willful or wanton conduct.  Accordingly, the

**Memorandum Decision & Order - 7**

Court will find that the all defendants except Officer Merica are entitled to immunity on Plaintiffs' state law claims pursuant to Idaho Code § 6-904(C).

## C.    I.C. § 6-904(3)

Defendants also argue that Plaintiffs' state law claims should be dismissed because Defendants are immunized by Idaho Code § 6-904(3) for claims arising out of an alleged assault and battery. This statute states in relevant part that a governmental entity and its employees "while acting within the course and scope of their employment and without malice or criminal intent shall not be liable for any claim which . . . [a]rises out of "assault [or] battery. . . ." Idaho Code § 6-904(3). Plaintiffs contend that the statute does not apply to this case because they are asserting wrongful death, not assault and battery claims.

Idaho courts have not directly addressed the question of whether the assault and battery exception applies to wrongful death claims. However, in _Kessler v. Barowsky_, 931 P.2d 641 (Idaho 1997), the Idaho Supreme Court dealt with a "wrongful death case arising out of an arrest." _Kessler_, 931 P.2d at 644. In _Kessler_, the Idaho Supreme Court noted the distinction between claims for negligent supervision or planning, and claims for assault and battery. _Id._ at 648. The court concluded that because the case was a negligence case, the assault and battery exception did not foreclose the claims. Although not directly stated by the

**Memorandum Decision & Order - 8**

court, it is a fair inference from the decision that if the plaintiff's claims were not based on allegations of negligence, the court would have applied the assault and battery exception to the wrongful death claims raised by the plaintiff.

Moreover, federal courts have also suggested that a similar assault and battery exception applies to wrongful death claims brought under the Federal Tort Claims Act.[3] In *United States v. Shearer*, 473 U.S. 52, (1985), the United States Supreme Court reviewed a wrongful death judgment based in part on whether the claim was barred by the assault and battery exception of the FTCA. In *Shearer*, the mother of an Army private brought an action against the Army alleging that the Army's negligence caused her son's death. In determining whether the assault and battery exception applied to a negligence claim for wrongful death, the court found that it was "clear that [Shearer's] claim arises out of the battery committed by" another army private. *Shearer*, 473 U.S. at 55. Thus, the court considered Shearer's wrongful death claim as a battery claim, which was subject to the assault and battery exception.[4] Again, although the court was not called upon to directly

---

[3] It is worth noting that the Idaho Tort Claims Act was largely patterned after the Federal Tort Claims Act. *See Masters v. State of Idaho*, 668 P.2d 73, 76 (Idaho 1983); *see also Walker v. Shoshone County*, 739 P.2d 290, 294 n. 4 (Idaho 1987).

[4] Only eight justices sat for the *Shearer* decision. Of those eight, four joined the opinion regarding the FTCA assault and battery issue, but of the four not joining in that part of the opinion, none dissented in the assault and battery issue.

**Memorandum Decision & Order - 9**

answer the question of whether the assault and battery exception applies in wrongful death cases, the clear inference was that it does.

Finally, in *Kearney v. U.S.*, 815 F.2d 535 (9th Cir. 1987), another case dealing with the issue of whether negligence claims are barred by the assault and battery exception, the Ninth stated that "[i]n the case at bar, the murder probably included an assault and battery." *Kearney*, 815 F.2d at 537. Yet another example of a court construing a wrongful death claim as a battery claim subject to the assault and battery exception.

Each of these cases support the conclusion that wrongful death cases are subject to the assault and battery exception found in both the Federal Tort Claims Act and the Idaho Tort Claims Act. Assault and battery claims can result in either a personal injury claim or a wrongful death claim – the difference is the resulting injury, not the actions of Defendants. Therefore, this Court concludes that the assault and battery exception applies in wrongful death cases.

However, this exception only applies to claims of assault and battery, and does not create an absolute bar to a claim that a city negligently supervised those officers who engaged in the assaultive behavior. In this regard, the Idaho Supreme Court has noted that it "do[es] not believe that the Idaho legislature, by creating an exception to governmental liability for actions arising out of assault and battery,

**Memorandum Decision & Order - 10**

thereby intended to relieve state agencies from any duty to safeguard the public from employees whom they know to be dangerous. . . ." *Doe v. Durtschi*, 716 P.2d 1238, 1245 (Idaho 1986). On the other hand, "a plaintiff cannot merely point to an assault and battery and then claim, based simply on its occurrence, that the state was negligent in not preventing it." *Id.* "In order to withstand dismissal under the intentional tort exception to the ITCA, a plaintiff must allege sufficient facts which, if proven, would demonstrate that the governmental entity should have reasonably anticipated that one of their employees would commit an intentional tort." *Id.*

Plaintiffs have put forth sufficient evidence to create a genuine issue of material fact with respect to whether the City of Chubbuck negligently supervised officers engaged in assaultive behavior. (See Affidavit of David Neal, Ex. B, Expert Report, pp. 5-6, Docket No. 129). These allegations are enough to preclude application of Idaho Code § 6-904(3). Accordingly, the Court will grant immunity based on Idaho Code § 6-904(3) to all of the individual defendants, including Officer Merica, but will not grant immunity to the City of Chubbuck based on this statute. However, given the Court's decision to grant the City of Chubbuck immunity based on Idaho Code § 6-904A, the Court will nevertheless dismiss all state law claims against all defendants.

**Memorandum Decision & Order - 11**

## II.    Federal Claims

Defendants seek summary judgment on Plaintiffs' 42 U.S.C. § 1983 claims based on qualified immunity.  Defendants also claim that the statute of limitations precludes the claims against Frasure, Ellis and Galloway.[5]  Finally, Defendants argue that Plaintiffs lack standing to pursue their claims.  The Court will address each contention in turn.

### A.    Qualified Immunity

"Qualified immunity serves to shield government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 971 (9th Cir. 2005) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The Supreme Court has set forth the following two-pronged inquiry to resolve all qualified immunity claims:

> First, taken in the light most favorable to the party
> asserting the injury, do the facts alleged show the
> officers' conduct violated a constitutional right?  Second,
> if so, was that right clearly established?  The relevant,
> dispositive inquiry in determining whether a right is
> clearly established is whether it would be clear to a

---

[5] Throughout this Memorandum Decision and Order, Officer Matt Galloway will be referred to as Galloway and the decedent, Max Galloway, will be referred to as Max Galloway.

> reasonable officer that his conduct was unlawful in the
> situation he confronted.  This inquiry is wholly objective
> and is undertaken in light of the specific factual
> circumstances of the case.

*Id.* (internal quotations and citations omitted).  Thus, a district court should

"concentrate at the outset on the definition of the constitutional right and . . .

determine whether, on the facts alleged, a constitutional violation could be found. .

. ." *Id.* at 207.  If a constitutional violation can be found, the court then decides

whether the violation was the source for clearly established law that was

contravened in the circumstances of the case.  *Id.*

### 1.    Defendant Merica

In this case, Plaintiffs allege excessive force on the part of Officer Merica.

More specifically, Plaintiffs allege that it was unlawful for Officer Merica to shoot

and kill Max Galloway in a small, well-lit bedroom, where Max Galloway could

not run, did not possess a firearm and did not otherwise behave in a violent

manner.  The Court finds that these facts allege a constitutional violation.

The question then becomes whether it would be clear to a reasonable officer

that Officer Merica's conduct was unlawful in the situation he confronted.  Taking

the alleged facts in the light most favorable to Plaintiffs, the evidence suggests that

it was unreasonable for Officer Merica to shoot and kill Max Galloway.  The

**Memorandum Decision & Order - 13**

Ninth Circuit has stated that deadly force cases pose a particularly difficult

problem because the officer defendant is often the only surviving eyewitness. *See*

*Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir.1994).  Therefore, the Court must

ensure that the officer does not take advantage of the fact that the witness most

likely to contradict his story – the person shot by the officer – is unable to testify.

*Id.*

> "The judge must carefully examine all the evidence in the record,
> such as medical reports, contemporaneous statements by the officer
> and the available physical evidence, as well as any expert testimony
> proffered by the plaintiff, to determine whether the officer's story is
> internally consistent and consistent with other known facts. In other
> words, the court may not simply accept what may be a self-serving
> account by the police officer."

*Id.*

In this case, there is evidence that the room in which Max Galloway was

shot was small and well lit.  Also, the lack of any fingerprint evidence suggests

that Max Galloway never picked up the Right Guard can which Officer Merica

indicates he thought was a weapon.  "Courts have repeatedly held that excessive

force defendants are not entitled to qualified immunity in cases where decedents

did not have weapons on their persons, brandish weapons, or threaten to use them

– even if the officers believed the decedents were armed." *Figueroa v. Gates*, 207

F.Supp.2d 1085, 1093 (C.D. Cal. 2002) (citing *Harris v. Roderick*, 126 F.3d 1189,

1203 (9th Cir.1997) and *Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir.1991)).  Moreover, Plaintiffs have proffered expert testimony and evidence that Max Galloway was shot while turning away from Officer Merica, rather than lunging toward him.  "Defendants are not entitled to qualified immunity where the decedent is in retreat or has made no attempt to flee."  *Id.* (citing *Harris*, 126 F.3d at 1203).

Therefore, the Court finds that, taking the evidence in the light most favorable to Plaintiffs, it would be clear to a reasonable officer that Merica's conduct was unlawful.  Accordingly, the Court finds that Officer Merica is not entitled to qualified immunity.

### 2.     Defendants Severe, Webb, Frasure, Ellis and Galloway

It is undisputed that Defendants Severe, Webb, Frasure, Ellis and Galloway did not personally commit the act – the shooting of Max Galloway – which constitutes the alleged excessive force in this case.  Moreover, with respect to Ellis and Galloway, Defendants contend that it is undisputed that they did nothing wrong by maintaining surveillance of Max Galloway's house.  On summary judgment, a party who does not bear the burden at trial may show that no genuine issue of material fact exists by demonstrating that "there is an absence of evidence to support the non-moving party's case."  *Celotex Corp. V. Catrett*, 477 U.S. 317

(1986). Once the non-moving party meets its burden, the moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Mere allegations are not enough. *Id.*

Other than the most bare allegations in their Amended Complaint, Plaintiffs provide no evidence or arguments opposing Ellis and Galloway's claim that they did nothing wrong. Plaintiffs make a single statement, at heading C of their brief to the effect that Ellis and Galloway cannot escape liability just because they did not pull the trigger. Apart from this single reference, Plaintiffs fail to even refer to Ellis and Galloway, except to argue that the claims against them are not barred by the statute of limitations. This is insufficient to meet their burden. Accordingly, the Court will grant summary judgment in favor of Defendants with respect to the claims against Ellis and Galloway.

With respect to Defendants Severe, Webb and Frasure, Plaintiffs argue that they are liable as supervisors. "Section 1983 suits do not impose liability on supervising officers under a respondeat superior theory of liability." *Graves v. City of Coeur D'Alene*, 339 F.3d 828, 848 (9th Cir. 2003) "Instead, supervising officers can be held liable under section 1983 only if they play an affirmative part in the alleged deprivation of constitutional rights." *Id.* (internal citations and

**Memorandum Decision & Order - 16**

quotations omitted).  Because it is rare that a supervisor will be personally involved in the same way as individual officers on the scene, to be held liable, a supervising officer must "set in motion a series of acts by others . . . , which he knew or reasonably should have known, would cause others to inflict the constitutional injury." _Id._ (internal citations and quotations omitted); *see also* _Larez v. City of Los Angeles, 946 F.2d 630, 645 (9th Cir. 1991)_. "Supervisory liability is imposed against a supervisory official in his individual capacity for [1] his own culpable action or inaction in the training, supervision, or control of his subordinates, [2] for his acquiescence in the constitutional deprivations of which the complaint is made, or [3] for conduct that showed a reckless or callous indifference to the rights of others." _Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991)_ (internal citations and quotations omitted).

In this case, Webb was the Chief of Police, Severe was the SRT team leader in charge of the final plan to apprehend Max Galloway, and Frasure was the assistant team leader and entry team leader with respect to the plan to apprehend Max Galloway.  As explained earlier, the alleged constitutional injury occurred when Officer Merica shot and killed Max Galloway.  The Court has already determined that it will deny Officer Merica qualified immunity because, taking the facts in the light most favorable to Plaintiffs, there is evidence suggesting that the

**Memorandum Decision & Order - 17**

room in which Max Galloway was shot was small and well lit, there is a lack of

fingerprint evidence suggesting that Galloway never picked up the Right Guard

can, and Plaintiffs have proffered expert testimony that Max Galloway was shot

while turning away from Officer Merica. This evidence suggests that it would be

clear to a reasonable officer that Merica's conduct was unlawful. This evidence,

does not, however, necessarily prevent summary judgment in favor of Webb,

Severe and Frasure.

With respect to Webb, Severe and Frasure, the inquiry is two-fold. First, is

there evidence that Webb, Severe and Frasure set in motion a series of acts by

others, which they knew or reasonably should have known, would cause Officer

Merica to shoot and kill Max Galloway. And second, if there is such evidence,

was their conduct objectively reasonable, thus entitling them to qualified

immunity.

With respect to the first question, Plaintiffs offer the expert testimony of

Captain Neal, who has over 37 years of law enforcement training. Captain Neal

testifies that Officer Merica did not receive enough situational training to be a

"point man." (See Affidavit of David Neal, Ex. B, Expert Report, p. 6, Docket No.

129). He further testifies that Officer Merica's lack of past training and

experience was responsible for the outcome in this case. (See Affidavit of David

**Memorandum Decision & Order - 18**

Neal, Ex. B, Supplemental Expert Report, p. 5, Docket No. 129).   Considering the

fact that Webb, Severe and Galloway were in charge of the plan to apprehend Max

Galloway, this testimony is sufficient to present a genuine issue of material fact as

to whether Webb, Severe and Galloway set in motion a series of actions, which

they knew or should have know, would result in Officer Merica shooting Max

Galloway.

The evidence also creates a genuine issue of material fact as to whether the

three officers' conduct was objectively reasonable.  If Officer Merica's training

and experience did not adequately prepare him to apprehend Max Galloway, an

objectively reasonable officer in their position would not have sent Officer Merica

into the residence to apprehend Max Galloway.  The Court will therefore deny

summary judgment with respect to the claims against Webb, Severe and

Galloway.[6]

### 3.    City of Chubbuck

The Ninth Circuit has stated that "a failure to train police officers may

---

[6] The Court notes that unlike the standard for immunity against state law claims under Idaho Code § 6-904A, Plaintiffs are not required to show that Defendants' conduct created a high degree of probability that harm would result in order to maintain their § 1983 claims.  Similarly, unlike the standard for immunity under Idaho Code § 6-904(3), Plaintiffs are not required to present evidence of malice or criminal intent in order to maintain their § 1983 claims.  Thus, what may appear at first blush to be inconsistent decisions with respect to immunity for the state law claims and immunity for the federal claims, are actually different outcomes based on different legal standards.

**Memorandum Decision & Order - 19**

serve as the basis for liability under § 1983 where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Gibson v. County of Washoe*, 290 F.3d 1175, 1194 (9th Cir. 2002) (internal quotations and citations omitted). Policies of omission regarding the supervision of employees, then, can be policies or customs that create municipal liability . . . but only if the omission reflects a deliberate or conscious choice to countenance the possibility of a constitutional violation. *Id.* Notably, "[w]hether a local government has displayed a policy of deliberate indifference to the constitutional rights of its citizens is generally a jury question." *Id.* at 1194-95. Finally, with respect to deadly force claims, the Ninth Circuit has stated that "because armed officers will often arrest fleeing felons, it is obvious that a municipality must train its officers in the constitutional limitations on the use of deadly force." *Id.* at 1195.

Plaintiffs again submit the testimony and report of Captain Neal in support of their contention that the City of Chubbuck's training was wholly inadequate, particularly with respect to Officer Merica. Given that "[w]hether a local government has displayed a policy of deliberate indifference to the constitutional rights of its citizens is generally a jury question," the Court finds that Captain Neal's testimony is a sufficient basis for denying summary judgment. *Id.* at 1194-

**Memorandum Decision & Order - 20**

95.

**B.    Statute of Limitations**

Defendants argue that the claims against Frasure, Ellis and Galloway are

precluded by the statute of limitations.  The Court need not address this issue as it

relates to Ellis and Galloway because the Court is dismissing the claims against

them.  However, the Court must determine whether the claims against Frasure are

barred by the statute of limitations.

Plaintiffs' § 1983 claims against Frasure are governed by Idaho's two-year

statute of limitations for personal injury actions set forth in Idaho Code §

5-219(4).  *See Osborn v. Salinas*, 958 P.2d 1142, 1144 (1998) (citing *Wilson v.*

*Garcia*, 471 U.S. 261 (1985)) (each state shall apply their statute of limitations

governing personal injury actions, and Idaho courts have held that § 1983 actions

must meet the two-year statute of limitations set forth in Idaho Code § 5-219(4)).

There is no dispute that Plaintiffs filed the original Complaint within the two-year

limitations period.  However, Plaintiffs did not amend the Complaint to include

Frasure as a defendant until after the two-year limitations period had run.  The

question, then, is whether the claims against Frasure relate back to the date of the

original Complaint.

Generally, F.R.C.P. 15(c) sets forth the standard governing whether an

amendment relates back to commencement of the action.  However, the Ninth

Circuit has stated that "the relation back provisions of state law, rather than Rule

15(c), govern a federal cause of action pursuant to 42 U.S.C. § 1983." *Merritt v.*

*County of Los Angeles*, 875 F.2d 765, 768 (9th Cir. 1989).[7]

Accordingly, the amendment adding Frasure as a party relates back so long

as it meets the requirements of I.R.C.P. 15(c), which states in relevant part as

follows:

> Whenever the claim or defense asserted in the amended
> pleading arose out of the conduct, transaction, or
> occurrence set forth or attempted to be set forth in the
> original pleading, the amendment relates back to the date
> of the original pleading.  An amendment changing the
> party against whom a claim is asserted relates back if the
> foregoing provision is satisfied and, within the period
> provided by law for commencing the action against the
> party, the party to be brought in by amendment (1) has
> received such notice of the institution of the action that
> the party will not be prejudiced in maintaining a defense
> on the merits, and (2) knew or should have known that,
> but for a mistake concerning the identity of the proper
> party, the action would have been brought against the
> party.

I.R.C.P. 15(c).  The claims against Frasure meet these requirements.

First, in *Ladd v. Coats*, 668 P.2d 126, 128 (Idaho Ct. App. 1983), the Idaho

---

[7] The outcome would be the same in this case even if the Court used the federal rule
because "Idaho's rule 15(c) is substantially the same as the federal rule, F.R.C.P. 15(c)." *Ladd v.
Coats*, 668 P.2d 126, 128 (Idaho Ct. App. 1983).

Court of Appeals determined that adding a party by amendment of the complaint was the same as changing a party under the Rule 15(c). *Id.* The court based its decision on the construction of F.R.C.P. 15(c), noting that the "word 'changing' in the federal rule has been liberally construed by the courts, so that amendments simply adding or dropping parties, as well as amendments that actually substitute defendants, fall within the ambit of the rule." *Id.* In this case, Plaintiffs were unaware of the identity of Frasure until after they received their responses to discovery, which they received after the two-year statute of limitations had run. Once they identified Frasure, they added him as a defendant.

Additionally, the claims against Frasure clearly arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading. In fact, Plaintiffs referenced Frasure's general actions in the original Complaint; they just didn't know the identity of Frasure at the time the Complaint was filed.

Finally, it is undisputed that Frasure worked at the City of Chubbuck Police Department along with Webb, Severe and Merica, who had been timely named as defendants in the Complaint. It is also clear that all of the officers involved in the Galloway incident would have obviously had knowledge of their involvement in the incident. Thus, within the period provided by law for commencing the action

**Memorandum Decision & Order - 23**

against the Frasure, Frasure would have received such notice of the institution of

the action so that he would not be prejudiced in maintaining a defense on the

merits. Frasure's relationship with the other defendants also establishes that he

knew or should have known that, but for a mistake concerning his identity, the

action would have initially been brought against him.

The Court therefore finds that the claims against Frasure relate back to the

commencement of the action. Accordingly, the Court will deny summary

judgment based on the argument that the statute of limitations precludes the claims

against Frasure.

## C.    Standing

Defendants contend that under Idaho law, Jackie Blackhawk and Dorothy

Gallegos cannot both represent the interests of the minor children in this matter.

Defendants base their argument on Idaho Code § 5-311, which states that "[w]hen

the death of a person is caused by the wrongful act or neglect of another, his or her

heirs or personal representatives on their behalf may maintain an action for

damages against the person causing the death. . . ."

Although it is not absolutely clear in what capacity Blackhawk and Gallegos

are suing Defendants, it is clear that they can both represent the interests of the

minor children. Defendants correctly note that Idaho Code § 5-311 is written in

the disjunctive.  However, the disjunctive is between the heirs and the representatives of the heirs, not between one representative and another representative. The reference in <u>Idaho Code § 5-311</u> to heirs and personal representatives is in the plural form.  Therefore, both Blackhawk and Gallegos can represent the minor children as personal representatives.

At some point before trial, Plaintiffs will be required to flesh out the capacity in which Blackhawk and Gallegos are suing Defendants.  However, at this point the Court declines to dismiss either of them based on a claimed lack of standing.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendants' Renewed Motion for Summary Judgment (Docket No. 117) shall be, and the same is hereby, GRANTED in part and DENIED in part.  The Court will grant the motion with respect to all claims against Defendants Ellis and Galloway.  The Court will also grant summary judgment in favor of Defendants with respect to all state law claims against all defendants.  The Court will deny the motion with respect to all other claims.

IT IS FURTHER ORDERED that the Clerk of the Court shall set this case for a status conference for the purpose of setting the case for trial.



DATED:  **November 24, 2006**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision & Order - 26**